UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

EDWARD M. ZINNER,

    Plaintiff,

v.                                             Civil Action No. 2:14cv163

RICHARD P. OLENYCH,
and
LONE TREE PRINTING, INC.,

    Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

After the parties reached a negotiated settlement of the federal claims raised in this matter, the case was dismissed with prejudice with the court retaining jurisdiction solely to enforce the parties' Settlement Agreement. Thereafter, the Defendants, Richard P. Olenych ("Olenych") and Lone Tree Printing, Inc. ("Lone Tree"), moved the court to enforce the Settlement Agreement, arguing that Plaintiff Edward M. Zinner ("Zinner") was attempting to re-litigate the settled matters in a new action filed in the Virginia Beach Circuit Court. Zinner opposed the Defendants' motion and the matter was referred to the undersigned United States Magistrate Judge for a recommended disposition under 28 U.S.C. § 636(b)(3). (ECF No. 95).

Because the state court action does not involve claims under the federal statute at issue in this case, the Defendants have not made any showing that Plaintiff is in breach, much less any

showing which would be required for the extraordinary injunctive relief requested. Accordingly, for the reasons set out in detail below, this report recommends that the court deny the Defendants' motion (ECF No. 82).

## I. FACTUAL AND PROCEDURAL HISTORY

Zinner, a musician and businessman, brought this Lanham Act claim against the Defendants seeking damages as a result of their use of the domain name edzinner.com.[1] Specifically, the federal claims asserted that Olenych and Lone Tree violated the Anti-Cybersquatting Consumer Protection Act amendments to the Lanham Act. Count I asserted that Defendants violated 15 U.S.C. § 8131 by registering the domain name edzinner.com without Zinner's consent. Zinner also alleged that the Defendants had the specific intent to profit from the registration by selling the domain name to Zinner. (Compl., ECF No. 1, ¶¶ 41-43). Count II asserted a claim under 15 U.S.C. § 1125(d) for bad faith registration of the domain name edzinner.com, alleged to be identical to the Ed Zinner mark which Plaintiff Zinner had registered with the patent and trademark office. (Summary Judgment Opposition, ECF No. 54, at 9, n.2).

Following contentious litigation, including a Motion for Summary Judgment and several contested discovery proceedings, the

---

[1] The unusual factual history of the dispute is detailed in the court's order denying the Defendants' Motion for Summary Judgment. (ECF No. 54).

2

parties represented to the court that they had reached a settlement agreement with the assistance of United States Magistrate Judge Tommy Miller. The court removed the case from the trial docket pending submission of an agreed dismissal order. Thereafter, negotiations apparently broke down regarding certain terms of the Settlement Agreement and Plaintiff Zinner originally filed a motion to enforce the agreement on August 5, 2015. (ECF Nos. 71, 72). Zinner's motion alleged that the parties reached an oral agreement at the settlement conference, but that Defendants Olenych and Lone Tree were refusing to sign a written agreement memorializing the terms. Defendants opposed that motion, arguing that the document presented contained additional terms that had not been agreed to. Specifically, Defendants objected to the document's language which purported to authorize a permanent injunction barring Defendants from creating other websites concerning Edward Zinner or his family members. Calling it an infringement of Olenych's First Amendment rights, the Defendants stated that no injunction had been agreed to as part of the settlement. (ECF No. 73, at 4). The Defendants also opposed the broad confidentiality language in the proposed agreement, and argued that the agreement needed to contain specific release language. The Defendants proposed modifying the confidentiality provisions and adding a release "from any and all causes of action, of any type or causes, solely arising out of or under the

3

Lanham Act, including specifically the Anti-Cybersquatting Consumer Protection Act . . . and any other claims brought in the Federal Court Action." (Wong Cert., Ex. A, ECF No. 77-2, at 3-4).

After briefing, the parties appeared before the District Judge. (ECF No. 81). During the hearing, the parties advised the court that they intended to renew their efforts to settle the case and immediately thereafter the parties and their counsel reconvened with the undersigned for a supplemental settlement conference. At the conclusion of that conference, the parties signed a written Settlement Agreement which has now been made part of the record as a sealed exhibit to these proceedings. (ECF No. 94).

As relevant here, the language of the executed Settlement Agreement, which was negotiated and edited during the supplemental conference, provides for no injunction, and contains only a prohibition that Defendants Olenych and Lone Tree would not use the domain name "edzinner.com," or create any other websites concerning Edward Zinner, his family members and/or his businesses. In addition, the agreement required that the Defendants turn over the "edzinner.com" domain name to Zinner, refrain from registering any new similar domain names, and make a settlement payment to Zinner. (Confidential Settlement Agreement & Release, ECF No. 94, at 1-2). The agreement specifically describes this pending matter, Civil Action No. 2:14cv163, as the

4

"Federal Court Action" and used that defined term throughout. The executed agreement did not adopt the release language requested by Defendants, but in exchange for the obligations and payment agreed to by Olenych and Lone Tree, Zinner agreed to "voluntarily dismiss with prejudice" the Federal Court Action, by filing with the court a Stipulation of Dismissal, which had been attached as Exhibit A. The executed agreement also contained the following provision:

> The parties acknowledge and understand that all information which was produced or identified during the Federal Court Action may be used by the parties in future proceedings, however, the parties do not waive any right to assert objections to their use, including any challenges to their admissibility or production, under the applicable Rules of Evidence and subject to any rulings by the court or other tribunal.

(ECF No. 94, at 2-3).

Finally, the agreement recites that it was entered into in order to compromise and "resolve fully any and all matters between Zinner and Olenych and Lone Tree Printing, Inc., and only concerns claims asserted in the Federal Court Action." (ECF No. 94, at 1).

The parties executed the Stipulation of Dismissal during the settlement conference and it was entered the same day. Following the dismissal, Zinner and other parties filed a new action in the Virginia Beach Circuit Court against Olenych, Lone Tree and six other defendants. See Ocean Equity Payment Solutions, LLC, et al. v. Olenych, et al., Case No. CL15004019 (ECF No. 83-2) (the "Virginia Beach Action"). The Virginia Beach Action is set forth in an 81-page Complaint alleging thirteen separate causes of

5

action. It was accompanied by more than 1,800 pages of "Exhibits," all of which have been filed in this court in support of Defendants' Motion to Enforce the Settlement. (ECF Nos. 83-2 – 83-20). Among the claims asserted in the Virginia Beach Action are the panoply of fiduciary and business tort claims which frequently accompany particularly contentious corporate litigation. Specifically, Zinner and the other plaintiffs assert claims for breach of fiduciary duty, tortious interference, statutory and common law conspiracy, negligent and intentional infliction of emotional distress, breach of contract, defamation and conversion. In addition, the new state case asserts a claim of "Unauthorized Use of Name" under Virginia Code § 8.01-40 and a violation of Virginia's Computer Crimes Act. (ECF No. 83-2).

Asserting broadly that the Virginia Beach Action attempts to re-litigate "nearly identical claims" to those which had been dismissed with prejudice in this court, the Defendants filed a motion (ECF No. 82) to enforce the Settlement Agreement seeking an order enjoining Zinner and "all those in active concert with him" from pursuing his claims against the Defendants in the Virginia Beach Action, or from seeking the same or similar relief against the Defendants in any other forum. (Reply in Supp. of Mot. to Enforce Settlement, ECF No. 88, at 2, 5). The motion does not specify which counts or claims in the Virginia Beach Action should be barred, nor does it address Zinner's claims against the six new

6

defendants, or the new plaintiffs' claims against Olenych and Lone Tree. Instead, it argues that all of the claims are "intertwined and inseparable." See (ECF No. 82). Accordingly, Defendants seek an order "permanently enjoining Zinner and all those in active concert with him from pursuing his claim against Defendants in" the Virginia Beach Action or any other forum. (ECF No. 83, at 8).

After reviewing the Settlement Agreement and the allegations contained in the Virginia Beach Action, the undersigned does not find any basis for relief in this court. Accordingly, this report recommends Defendants' motion be denied.

## II. ANALYSIS

District courts have the inherent authority to enforce settlement agreements resolving federal court actions. Hensley v. Alcon Labs, Inc., 277 F.3d 535, 540 (4th Cir. 2002). However, as federal courts are courts of limited jurisdiction, "a district court may not enforce a settlement agreement 'unless the agreement had been approved and incorporated into an order of the court, or at the time the court is requested to enforce the agreement, there exits some independent ground upon which to base federal jurisdiction.'" Columbus - Am. Discovery Group v. Atl. Mut. Ins. Co., 203 F.3d 291, 299 (4th Cir. 2000) (quoting Fairfax Countrywide Citizens Ass'n. v. Fairfax Cnty., 571 F.2d 1299, 1303 (4th Cir. 1978). However, where the court retains jurisdiction in

the order dismissing the matter, it also retains jurisdiction to enforce the parties' negotiated settlement. New Cingular Wireless PCS, LLC v. Spotsylvania Cnty., No. 3:12cv351, 2014 WL 2864107, at *5 (E.D.Va. June 24, 2014) (citing Petty v. Timken, 814 F.2d 150 (4th Cir. 1988)).

Here, the court unambiguously retained jurisdiction to enforce the terms of the parties' Settlement Agreement. (ECF No. 80, at 2). Nevertheless, after reviewing the claimed breach of the agreement and the remedy sought, the undersigned finds no basis for injunctive relief against the Virginia Beach Action or Plaintiff Zinner. To begin with, the Virginia Beach Action involves several parties who were not made party to this federal Lanham Act claim or the Settlement Agreement. More importantly, however, the Virginia Beach Action contains almost entirely different causes of action from those resolved by the agreed dismissal order. Moreover, though Defendants attempted to insert separate release language in the Settlement Agreement, it was never added, and thus the limits of any preclusion arise from the with-prejudice dismissal of the Lanham Act claims resolved by the settlement and not from any term in the Settlement Agreement itself. Finally, the Anti-Injunction Act, 28 U.S.C. § 2283, strictly limits a federal court's ability to stay state litigation and nothing in Defendants' motion is sufficient to invoke the extraordinary remedy they seek.

8

1. **The Virginia Beach Action Involves Eight Additional Parties Not Subject to the Restrictions of the Settlement Agreement.**

It is a fundamental precept of contracts that they require mutual assent to the terms of the agreement. <u>Valjar, Inc. v. Mar. Terminals, Inc.</u>, 265 S.E.2d 734, 737 (Va. 1980) ("A contract cannot exist if the parties never mutually assented to terms proposed by either as essential to an accord."). In this case, the only parties to the Settlement Agreement are Zinner, Olenych and Lone Tree. But the challenged Virginia Beach Action is asserted by Zinner and two other entities against a total of eight defendants, including several totally unrelated individuals and entities. (Virginia Beach Action, ECF No. 83-2, at 1-2). Indeed, the thrust of the Virginia Beach Action is totally unrelated to the website dispute resolved here. Instead, it involves claims among competing companies in the receivables financing business related to their customers and fair competition. Importantly, none of these additional parties were identified as intended third party beneficiaries of the settlement. See <u>Valley Landscape Co., Inc. v. Rolland</u>, 237 S.E.2d 120, 123-24 (Va. 1977) (citations omitted) (describing elements of third party beneficiary claims). Accordingly, the terms of the Settlement Agreement provide no basis for injunctive relief against or in favor of these non-parties.

## 2. The Virginia Beach Action Does Not Assert "Nearly Identical" Claims.

Although the Defendants assert that the Virginia Beach Action asserts "nearly identical claims" to those dismissed following settlement of the Federal Court Action, that claim is not supported by the exhibits they cite or the records of the respective proceedings. As mentioned, the Virginia Beach Action asserts thirteen separate counts against eight defendants, six of whom were never named in this federal court case. Most of these claims are totally unrelated to the Lanham Act Cybersquatting matter resolved in this court. Instead, they concern the parties' competing businesses involved in providing funding to various companies by acquiring their receivables at a discount and pursuing their collection. Specifically, the Virginia Beach Action, which includes claims by Zinner-related entities Ocean Equity Payment Solutions, LLC, and Ocean Equity Group asserts that Olenych, his son, Perry Olenych, and a competing entity formed by Perry Olenych known as Ally Merchant Services, LLC, engaged in various improper business practices which underlie the counts for breach of fiduciary duty, tortious interference, statutory and common law conspiracy, and other tort and contract claims.[2] (Compl., ECF No. 83-2, at 59-81). Some of these claims had been

---

[2] For example, Count 12 asserts a specific breach of contract claim related to a draw against salary to be earned; Count 11 relates to a written independent contract agreement; Count 8 claims defamation related to disparaging statements made about Zinner to customers, vendors and lenders. (Complaint, ECF No. 83-2, at 70-81).

previously filed in a state court action that had been nonsuited during the pendency of the federal case. In fact, the parties' Settlement Agreement in this case specifically anticipated and provided for the refiling of the Virginia Beach Action which was openly discussed during the settlement conference. Zinner and his attorney did not agree that Olenych's creation and use of the "edzinner.com" website would not also be relevant to these other claims. In fact, the Settlement Agreement specifically provides that "all information which was produced or identified during the Federal Court Action may be used by the parties in future proceedings" subject to contemporaneous objections in the court in which they are offered. (Settlement Agreement, ECF No. 94, at 2-3).

The only two state claims that bear some similarity to those resolved in the federal case are Count 10, which asserts a claim under Virginia Code § 8.01-40 for the unauthorized use of a name, and Count 13, which asserts a violation of Virginia's Computer Crimes Act. But neither of these two claims are "identical" or nearly so to the claims asserted in this Lanham Act case. The civil action authorized under Virginia Code § 8.01-40 for the unauthorized use of name prohibits a wide variety of unauthorized exploitation of the name or likeness of private parties "for advertising purposes or for the purposes of trade." Va. Code Ann. § 8.01-40(A). The statute permits a civil claim for "damages for

11

any injuries sustained by reason of such use, including punitive damages, if the violation was committed knowingly." Id. While this statute bears some similarity to Zinner's federal claim under § 8131 for registering the edzinner.com domain name, the two statutes are sufficiently different, and the volume of evidence asserted in the Virginia Beach Action so great, that this court is not in a position to state that Zinner or his affiliated entities are in breach of the Settlement Agreement by pursuing separate relief under the Virginia statute. This is particularly so absent specific release language, which was deliberately excluded from the Settlement Agreement.

Similarly, Virginia's Computer Crimes Act (Va. Code § 18.2-152.12) provides a claim for damages for a wide variety of unlawful uses of computers, including personal trespass, computer invasion of privacy and harassment. Va. Code § 18.2-152.5, .7, & .7:1. While some of the conduct litigated in the federal case could also be proscribed by the Virginia Computer Crimes Act, and thus give rise to a separate action, the complaint in the Virginia Beach Action describes many other instances of alleged computer malfeasance including a scheme to misdirect internet users to allegedly misleading information concerning Zinner's prior criminal conviction by posting "meta-tags," which would direct those searching for Zinner legitimately online to old news articles about the convictions. In addition, Zinner alleges that

12

the defendants in the Virginia Beach Action conspired via e-mail and other electronic means, and created other websites which are used exclusively to disparage Zinner online. All of this is described in the 80-page state Complaint. In fact, it was this concern by Zinner that animated much of the second settlement conference before the undersigned. The reason Zinner intended to seek injunctive relief against Olenych and Lone Tree from this court was to prevent them from additional misuse of his name in other ways on the internet. Olenych and his counsel steadfastly refused to agree to any court involvement in enjoining Olenych's use of the Zinner name. As a result, Zinner himself stated that he would pursue relief for the online activity in state court.

Given this volume of new material alleged against the defendants in the Virginia Beach Action - and the breadth of both Virginia's proscription on the unauthorized use of name, and its Computer Crimes Act - the Settlement Agreement, by its terms, does not bar Zinner or Zinner affiliated entities from litigating these claims. Although the with-prejudice dismissal negotiated as part of the settlement, may well limit the issues or types of relief which can be asserted, it is for the Virginia Beach court to determine the preclusive effect of this court's judgment dismissing the claims with prejudice.

### 3. The Preclusive Effect of the Federal Court Dismissal Is Properly Decided by the Virginia Beach Circuit Court.

To the extent Lone Tree and Olenych are entitled to any relief against the state claims, it would be limited to the preclusive effect, if any, of the federal court judgment on those claims. Claim preclusion - also called res judicata - "bars 'relitigation of the same cause of action, or any part thereof, which <u>could have been litigated</u> between the same parties and their privies." Martin-Bangura v. Va. Dept. of Mental Health, 640 F. Supp. 2d 729, 738 (E.D. Va. 2009) (emphasis in original) (quoting Smith v. Ware, 421 S.E.2d 444, 445 (Va. 1992)). That is, "a final judgment on the merits of a claim" will preclude litigation based on this same claim. State Water Control Bd. v. Smithfield Foods, Inc., 542 S.E.2d 766, 769 (Va. 2001). The purpose of this doctrine is to "protect[] litigants from multiple lawsuits, conserve[] judicial resources, and foster[] certainty and reliance on legal relationships." Id.

The Supreme Court of Virginia promulgated Rule 1:6, adopting "a same 'conduct, transaction, or occurrence' test" for claim preclusion. Martin-Banguara, 640 F. Supp. 2d at 738. Virginia Supreme Court Rule 1:6 provides that:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal

14

>theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought. A claim for relief pursuant to this rule includes those set forth in a complaint, counterclaim, cross-claim or third-party pleading.

Va. S. Ct. Rule 1:6.

Relevant to the present case, a "prior federal court judgment is accorded the preclusive effect in subsequent state litigation that the federal courts would have attached thereto." Glasco v. Ballard, 452 S.E.2d 854, 855 n. (Va. 1995); see also, Taylor v. Sturgell, 553 U.S. 880, 891-92 (2008) (describing elements of federal claim preclusion). And, a judgment of dismissal with prejudice may "operate[] as res judicata and is as conclusive of the rights of the parties as if the suit had been prosecuted to a final disposition." Raley v. Haider, 747 S.E.2d 812, 815 (Va. 2013) (quoting Virginia Concrete Co. v. Bd. of Supervisors, 91 S.E.2d 415, 418 (Va. 1958)).

As this precedent makes clear, claims of preclusion are properly evaluated by the court in which the allegedly barred action is filed and not by the court which resolved the assertedly preclusive claim. Here, the Settlement Agreement does not provide any substantive prohibition on Zinner or his affiliates filing any claim in state court. To the contrary, the express language of the Settlement Agreement anticipated additional litigation between the parties. The preclusive effect, if any, of this court's

15

judgment stems from the claim litigated and the result achieved, and not from any language in the Agreement itself. As mentioned previously, none of the state claims in the Virginia Beach Action are identical to the Anti-Cybersquatting claims resolved here. Although some of the issues overlap, it is only the state court where these actions are pending that can determine the scope of any bar presented by the judgment.

This is not to say that matters resolved here would have no effect absent an identical claim in state court. Issue preclusion - known as collateral estoppel - also has preclusive effect, and "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Lee v. Spoden, 776 S.E.2d 798, 803 (Va. 2015) (quoting Taylor v. Sturgell, 553 U.S. 880, 892 (2008)). That is, issue preclusion bars "relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation" when "the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate." Va. Hosp. Ass'n v. Baliles, 830 F.2d 1308, 1311 (4th Cir. 1987). "[A]s a general rule, nonparties will not have had a full and fair opportunity to litigate the issues

raised in the previous action," and issue preclusion will not apply. Id. at 1312.[3]

In this case, however, the issues resolved are confined to, and defined by, the judgment of the court and not the Settlement Agreement. Moreover, as demonstrated above – under both of the similar state claims asserted, Zinner has alleged in voluminous additional detail conduct that he claims satisfies the elements of those newly asserted causes of action. And, the judgment entered here by the agreement of the parties was not based on evidence presented at trial, or on any specific factual finding. As a result, the Virginia Beach court is best suited to evaluate any claims of issue preclusion as well.

4. **The Defendants Have Not Plausibly Alleged a Claim That Injunction is Necessary to Enforce This Court's Order.**

The Defendants' claim that Zinner's state claims are so "intertwined" with allegations regarding the edzinner.com website that the entire state action should be restrained. This argument necessarily implicates strict limits on the court's authority under the Anti-Injunction Act. The Anti-Injunction Act, 28 U.S.C. § 2283, provides that "a court of the United States may not grant an injunction to stay proceedings in a State court except as

---

[3] Nonparties, however, may be precluded from relitigating an issue if the nonparty: (1) "agree[d] to be bound by the determination of issues in an action between others," (2) had a "pre-existing 'legal relationship' " with the prior party, (3) "was 'adequately represented by someone with the same interests who [wa]s a party' to the suit," (4) " 'assume[d] control' over the litigation in which that judgment was rendered," (5) was "the designated representative of a person who was a party to the prior adjudication," or (6) will be bound by "a special statutory scheme ... 'expressly foreclose[s] successive litigation." Taylor, 553 U.S. at 893-95.

expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This statute is not a jurisdictional statue, but rather a limit on a federal district court's equity jurisdiction. See Tyler v. Russel, 410 F.2d 490 (10th Cir. 1969). Olenych and Lone Tree suggest the court may invoke the third exception. (ECF No. 83, at 5, n.4). Because of federalism concerns, courts narrowly construe the three statutory exceptions, and the United States Supreme Court has warned against enlarging the exceptions "by loose statutory construction." Atlantic Coast Line R.R. Co. v. Bhd of Locomotive Eng'rs, 398 U.S. 281 (1970); see Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 142 (1988); see also Burr & Forman v. Blair, 470 F.3d 1019 (11th Cir. 2006); Baines v. City of Danville, 337 F.2d 579 (4th Cir. 1964).

The third exception – to "protect or effectuate" federal judgments – "was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." Chick Kam Choo, 486 U.S. at 147. To determine whether the issue was "decided by the federal court," courts look to "what the earlier federal order actually said." Id. at 148 (emphasis in original). Although this exception is based on principles of res judicata and collateral estoppel, courts narrowly apply this exception. Id.; Atlantic Coast Line R.R. Co., 398 U.S. at 286-87.

18

Any federal injunction against state court proceedings must meet one of the three exceptions, but because the three exceptions are narrowly construed, a federal injunction rarely meets one of them. As a result, federal courts only issue injunctions staying state court proceedings in extraordinary cases. See generally Atlantic Coast Line R.R. Co., 398 U.S. 281; see also Chick Kam Choo, 486 U.S. 140.

As set forth elsewhere in this report, Defendants have not presented any extraordinary circumstances warranting injunctive relief under this third exception. The Virginia Beach Action does not assert claims under the Lanham Act. As a result, there is no risk that the Virginia Beach court could issue an order expressly contrary to this court's judgment resolving those narrow statutory claims. Therefore, no injunction is necessary to effectuate or preserve the court's prior ruling. In so recommending, the undersigned offers no opinion on the preclusive consequence of the court's judgment on the state claims which are asserted. As described above, these consequences may be ably assessed by the state court before which the matters are now pending.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendants' Motion to Enforce the Settlement Agreement (ECF No. 82) be DENIED.

### IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of posting of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/ 
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
December 24, 2015